# DEFENDANTS' PROPOSED JOINT MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO SLUSA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RUSSELL BOURRIENNE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 10-cv-07295 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| JOHN P. CALAMOS, SR., Trustee of the Calamos Convertible Opportunities and Income Fund, et al., | ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) ) ) | |

## JOINT MEMORANDUM IN SUPPORT OF THE INDEPENDENT TRUSTEE DEFENDANTS' AND THE CALAMOS DEFENDANTS' MOTION TO DISMISS PURSUANT TO SLUSA

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone:  312.372.1121
Facsimile:  312.827.8000

*Attorneys for defendants*
*Weston W. Marsh, Joe F. Hanauer,*
*John E. Neal, William R. Rybak,*
*Stephen B. Timbers and David D. Tripple*

Christian J. Mixter (*pro hac vice*)
Patrick D. Conner (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.739.3000
Facsimile: 202.739.3001

Kevin B. Dreher
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: 312.324.1000
Facsimile: 312.324.1001

*Attorneys for defendants John P. Calamos, Sr.,*
*Calamos Advisors LLC and Calamos Asset*
*Management, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

PLAINTIFF'S ALLEGATIONS ............................................................................................... 2

ARGUMENT ............................................................................................................................. 5

I.    Each Element Of SLUSA Preclusion Is Satisfied In This Case, Requiring Dismissal Of The Complaint ............................................................................................................. 6

    A.    "Covered Class Action" ...........................................................................................7

    B.    State Law ................................................................................................................7

    C.    Misrepresentations Or Omissions Of Material Fact ................................................7

    D.    "In Connection With" The Sale Of Covered Securities..........................................12

II.    The Exceptions To SLUSA Preclusion Have No Application ......................................... 13

    A.    Plaintiff Has Not Brought An "Exclusively Derivative" Action ...........................13

    B.    The SLUSA Exception Defined In 15 U.S.C. § 78bb(f)(3) Does Not Apply........14

CONCLUSION....................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anderson v. Merrill Lynch Pierce Fenner & Smith,*
521 F. 3d 1278 (10th Cir. 2008) ........................................................................ 6

*Atkinson v. Morgan Asset Management, Inc.,*
664 F. Supp. 2d 898 (W.D. Tenn. 2009).................................................. 11, 16

*Beckett v. Mellon Investor Servs, Inc.,*
No. C06-5245, 2006 WL 3249189 (W.D. Wash. Nov. 8, 2006) ............................ 8, 9, 11

*Comm'r of Internal Revenue v. Snite,*
177 F.2d 819 (7th Cir. 1949) ........................................................................ 17

*Daniels v. Morgan Asset Mgmt., Inc.,*
No. 09-cv-2800, 2010 WL 4024604 (W.D. Tenn. Sept. 30, 2010) ................................... 8

*Diana Allen Life Ins. Trust v. BP P.L.C., et al.,*
No. 06 Civ 14209, 2008 WL 878190 (S.D.N.Y. Mar. 31, 2008) ...................... 14

*Felton v. Morgan Stanley Dean Witter & Co.,*
429 F. Supp. 2d 684 (S.D.N.Y. 2006)................................................................ 9

*Fisher v. Kanas,*
487 F. Supp. 2d 270 (E.D.N.Y. 2007) ........................................................... 18

*G.F. Thomas Investments, L.P. v. Cleco Corp.,*
317 F. Supp. 2d 673 (W.D. La. 2004)............................................................. 15

*Hogan v. Baker,*
No. 305 cv 0073P, 2005 WL 1949476 (N.D. Tex. Aug. 12, 2005).................................. 13

*Instituto de Prevision Militar v. Lehman Bros., Inc.,*
485 F. Supp. 2d 1340 (S.D. Fla. 2007) .......................................................... 14

*Instituto de Prevision Militar v. Merrill Lynch,*
546 F.3d 1340 (11th Cir. 2008) ..................................................................... 12

*Kennedy v. Venrock Assoc.,*
348 F.3d 584 (7th Cir. 2003) ........................................................................ 13

*Kircher v. Putnam Funds Trust,*
398 Ill. App. 3d 664 (5th Dist. 2010)........................................................ 9, 10

*Korsinsky v. Salomon Smith Barney, Inc.,*
No. 01-cv-6058, 2002 WL 27775 (S.D.N.Y. Jan. 10, 2002) ............................. 8

*Kramer v. Western Pacific Indus. Inc.*,
   546 A.2d 348 (Del. 1988) ............................................................................. 13

*Kurz v. Fid. Mgmt. & Research Co.*,
   No. 07 C 709, 2008 WL 2397582 (S.D. Ill. June 10, 2008), *aff'd*, 556 F. 3d 639
   (7th Cir. 2009) ................................................................................................ 8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006) ................................................................................ passim

*Potter v. Janus Investment Fund*,
   483 F. Supp. 2d 692 (S.D. Ill. 2007) ............................................................. 6

*Rabin v. JPMorgan Chase Bank, N.A.*,
   No. 06-C-5452, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007) ................... 9, 11, 13

*Romano v. Kazacos*,
   609 F. 3d 512 (2d Cir. 2010) ........................................................................ 9

*S.E.C. v. Sterling Precision Corp.*,
   393 F.2d 214 (2d Cir. 1968) ......................................................................... 18

*Segal v. Fifth Third Bank*,
   581 F.3d 305 (6th Cir. 2009) ..................................................................... 8, 9

*Stoody-Broser v. Bank of America, N.A.*,
   No. C08-02705, 2009 WL 2707393 (N.D. Cal. Aug. 25, 2009) ................... 9, 11

*Sullivan v. Holland & Knight LLP*,
   No. 09 C 531, 2010 WL 1558553 (M.D. Fla. Mar. 31, 2010) ....................... 16

*Tellabs, Inc. v. Makor Issues and Rights, Ltd.*,
   551 U.S. 308 (2007) ...................................................................................... 17

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ........................................................................ 13

*Zoren v. Genesis Energy, L.P.*,
   195 F. Supp. 2d 598 (D. Del 2002) .............................................................. 15

## Statutes

12 Del. C. § 3818 .............................................................................................. 18

15 U.S.C. § 77p .......................................................................................... passim

15 U.S.C. § 77r ................................................................................................. 12

15 U.S.C. § 78bb ........................................................................................ passim

8 Del. C. § 160 .................................................................................................................... 18

**Other Authorities**

H.R. Conf. Rep. No. 105-803 (1998).......................................................................... 15

S. Rep. No. 105-182 (1998) ......................................................................................... 15

Defendants Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers and David D. Tripple (collectively, the "Independent Trustee Defendants"), by their attorneys, and defendants John P. Calamos, Sr., Calamos Advisors LLC and Calamos Asset Management, Inc. (the "Calamos Defendants"), by their attorneys, respectfully submit this Memorandum in support of their Joint Motion to Dismiss the Complaint of Plaintiff Russell Bourrienne on the ground that the claims asserted in the Complaint are precluded by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 77p(b), § 78bb(f)(l) ("SLUSA").[1]

## PRELIMINARY STATEMENT

The Complaint in this case is brought by an investor in common shares of the Calamos Convertible Opportunities and Income Fund, a Delaware statutory trust and a closed-end investment company (the "Fund" or the "Trust") registered under the Investment Company Act of 1940, as amended (the "ICA"). (Compl. ¶¶ 1, 23) He purports to sue on behalf of a class of Fund shareholders, claiming a loss in the value of the putative class members' investment in Fund common shares. (Compl. ¶¶ 1, 21, 39, 51(d)) In summary, the Complaint alleges that the Fund's public statements described its ability to leverage its investments utilizing auction market preferred shares which were "perpetual" and which the Fund allegedly represented never had to be redeemed (Compl. ¶¶ 25(a), (d), 34, 44, 47, 51(b)), but that the Fund instead redeemed those preferred shares in 2008 and 2009, utilizing assertedly less favorable debt financing. (Compl. ¶¶ 4, 36-37, 41-44, 56) This is alleged to have "eliminat[ed] one of the major benefits" of an

---

[1] The Independent Trustee Defendants and the Calamos Defendants also have moved to dismiss any claims that may survive SLUSA preclusion on various alternative grounds. Those alternative grounds are the subject of separate, supplemental memoranda filed by the Independent Trustee Defendants and the Calamos Defendants on December 3, 2010.

investment in common shares, caused the value of common shares to decline, and "frustrate[d] the ability of common shareholders to realize the benefits of an investment in the Fund, as described in the Fund's statements of [sic – "to"] the SEC and the public."  (Compl. ¶¶ 39, 44, 51(d), 53, 56)  The Defendants are alleged to have caused the Fund to redeem the AMPS while under an undisclosed conflict of interest.  (Compl. ¶¶ 4, 26-30, 38)

Although the Complaint is pleaded in counts asserting breach of fiduciary duty by the Fund's Trustees, aiding and abetting a breach of fiduciary duty, and unjust enrichment (Compl. ¶¶ 52-72), the Complaint by its terms does not purport to be brought as a derivative action on behalf of the Fund, as one would expect of such state law claims.  Instead the Complaint is cast as a class action based upon the Fund's alleged pronouncements concerning the benefits and advantages of an investment in common shares.  These allegations, selectively drawn from the Fund's Securities and Exchange Commission ("SEC") filings and other, unidentified public statements, betray Plaintiff's use of state law labels to mask claims predicated upon asserted misrepresentations and nondisclosures in connection with the sale of Fund common shares. They also steer the Complaint directly into the path of SLUSA, which precludes the maintenance of this case as a class action and requires its dismissal with prejudice.

## PLAINTIFF'S ALLEGATIONS

Plaintiff Bourrienne alleges that he has been an owner of common shares of the Fund since 2006.  (Compl. ¶ 8)  The putative class Bourrienne purports to represent is defined to include "all . . . individuals who were the beneficial owners of common shares of the . . . [Fund] . . . at any time from March 19, 2008 through the present . . . ."  (Compl. ¶¶ 1, 21)[2]

---

[2]   Another action, purportedly brought on behalf of the same putative class, is now pending before District Judge Elaine E. Bucklo on removal from the Circuit Court of Cook County. *Brown v. Calamos, et al.*, Case No. 10-cv-6558 (N.D. Ill.).  The defendants in that case (which

Bourrienne alleges that the primary investment objective of the shares he purchased, as stated by the Fund in SEC filings, "is to provide total return through a 'combination of capital appreciation and current income,'" and that a "key element[] of an investment in the common stock of the Fund" is the Fund's "ability to earn positive returns on leverage . . . ." (Compl. ¶¶ 23, 25(d), 47) The Complaint alleges that a number of the Fund's SEC filings described its "Ability to Put Leverage to Work" as an advantage of the Fund, an advantage which was "important to its common shareholders." (Compl. ¶ 25(d)) At the time of Plaintiff's investment, this leverage was provided by Auction Market Preferred Shares ("AMPS")[3] issued by the Fund, which Bourrienne alleges provided the Fund with very favorable financing. (Comp. ¶¶ 25, 34, 44) The beneficial effect of this leverage was "reflected in the Fund's regular cash distributions to common shareholders and described in its regular reports to its shareholders." (Compl. ¶ 25(d))

The Fund also is alleged to have made public statements that the term of the AMPS was "perpetual," a feature "especially important" and "significantly valuable" to the Fund's common shareholders, which made AMPS "a more attractive source of leverage than borrowing." (Compl. ¶¶ 2, 25(a), 31, 44) According to the Complaint, AMPS never had to be repaid, nor were they subject to redemption by the Fund. (Compl. ¶¶ 2, 25(a), 31) On the latter point, Plaintiff alleges that the Fund represented, in a 2003 AMPS prospectus, that "AMPS are not redeemable by the holders of AMPS." (Compl. ¶ 34)

---

include the Independent Trustee Defendants, the Calamos Defendants, and the Fund) have moved to dismiss under SLUSA, and the plaintiff has moved to remand.

[3] The Complaint refers to the auction rate preferred shares issued by the Fund by two different acronyms, "AMPS" and "ARS." In the interest of clarity and consistency, this Memorandum will refer to the shares as "AMPS."

Notwithstanding these representations, the "Individual Defendants" -- the Independent Trustees of the Fund and John P. Calamos, Sr. (a Trustee and "an employee" of what the Complaint refers to as the "Calamos Sponsorship Group")[4] -- are alleged to have caused the Fund to redeem its outstanding AMPS in June 2008 and August 2009, and to have replaced the AMPS with debt financing that was not perpetual, and ostensibly is more risky and costly to the Fund than AMPS.  (Compl. ¶¶ 29, 36-38, 41-47, 51(c))  Plaintiff contends that this action deprived common shareholders of "the benefits of an investment in the Fund, *as described in the Fund's statements of* [sic – "to"] *the SEC and the public*."  (Compl. ¶ 53; emphasis supplied) *See also* Compl. ¶ 56, alleging that redemption of the AMPS "eliminat[ed] one of major benefits of the investment" in common shares.

The Complaint claims that the Individual Defendants were motivated to take this action by "economic interests" they supposedly shared with the Calamos Sponsorship Group.  (Compl. ¶¶ 26, 28-30)  These "common economic interests" ostensibly were served by providing liquidity to holders of AMPS following the February 2008 collapse of the auction market in which AMPS were purchased and sold.  (Compl. ¶¶ 30, 33, 38)  Plaintiff contends that the redemption furthered the interests of the Calamos Sponsorship Group and holders of AMPS at the expense of the interests of common shareholders.  (Compl. ¶¶ 4, 28, 30, 38-39)

On September 14, 2010, Plaintiff Bourrienne filed an action in this Court against each of the Defendants named in this case, in addition to the Fund, which was assigned Case No. 1:10-cv-5833.  The Complaint in that action contained allegations similar to, and pleaded the same claims as, the Complaint in this case.  Plaintiff voluntarily dismissed Case No. 1:10-cv-5833 on

---

[4]   The Complaint defines the "Calamos Sponsorship Group" to include defendants Calamos Advisors LLC, Calamos Asset Management, Inc., and their affiliates.  (Compl. ¶ 26)

October 7, 2010, and then filed this action in the Circuit Court of Cook County on October 15, 2010. Defendants timely removed the action to this Court pursuant to SLUSA on November 12, 2010.

Count I of the Complaint purports to assert a claim for breach of fiduciary duty against the Individual Defendants. Count II purports to allege a claim for aiding and abetting the asserted breach of fiduciary duty alleged in Count I, and Count III alleges a claim for unjust enrichment. Both Counts II and III are brought against Calamos Advisors LLC and Calamos Asset Management, Inc.

## **ARGUMENT**

Congress enacted SLUSA in 1998 to prevent class action plaintiffs from using state law legal theories, and state court venues, to evade the heightened pleading standards and other requirements and limitations imposed in securities class actions by the Private Securities Litigation Reform Act of 1995. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006). SLUSA added to the Securities Act of 1933, as amended (the "1933 Act") and the Securities Exchange Act of 1934, as amended (the "1934 Act"), parallel provisions precluding certain class actions brought under state law.[5] As amended by SLUSA, the 1934 Act provides:

> "(1) *Class action limitations.* No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

---

[5]  For ease of reference, all citations to SLUSA in this Memorandum will be to the provisions of SLUSA appearing in the 1934 Act, unless otherwise appropriate.

> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."

15 U.S.C. § 78bb(f)(1). The parallel provision of the 1933 Act uses identical language, with the exception that it employs the phrase "untrue statement or omission of a material fact" in lieu of "misrepresentation or omission of material fact . . . ." 15 U.S.C. § 77p(b).

The Supreme Court has emphasized that SLUSA should be given a broad construction to serve SLUSA's stated purpose of preventing the use of state law-based class actions to evade the procedural and substantive protections of the PSLRA, and has applied SLUSA even where a plaintiff's claim would not be actionable under the federal securities laws. *Dabit*, 547 U.S. at 86 (holding that SLUSA precluded an alleged state law action for breach of fiduciary duty brought on behalf of a putative class comprised of "holders" of securities, even though such persons would not have had a private right of action under Section 10(b) of the 1934 Act and Rule 10b-5 thereunder).[6] Thus, although SLUSA does not preempt individual claims, or claims asserted derivatively, it altogether precludes class actions asserting claims within its scope, even where those claims could not be brought in a private federal securities action because one or more of the elements of such a cause of action is absent. *Id.*

I.    **Each Element Of SLUSA Preclusion Is Satisfied In This Case, Requiring Dismissal Of The Complaint**

As set forth above, SLUSA precludes (1) "covered class actions" (2) based upon state law that (3) allege "a misrepresentation or omission of a material fact" (4) "in connection with

---

[6]    Similarly, SLUSA applies even though a complaint contains no allegation of scienter -- a requirement in private actions under Section 10(b) of the 1934 Act and Rule 10b-5. *Anderson v. Merrill Lynch Pierce Fenner & Smith*, 521 F. 3d 1278, 1285 (10th Cir. 2008); *Potter v. Janus Investment Fund*, 483 F. Supp. 2d 692, 698 (S.D. Ill. 2007).

the purchase or sale of a covered security."  Each of these requirements is met in this case, and this action therefore must be dismissed with prejudice.

A.      **"Covered Class Action"**

A "covered class action," for purposes of SLUSA, includes any lawsuit in which damages are sought on behalf of 50 or more persons or prospective class members and common questions of law or fact predominate over individualized questions.  15 U.S.C. § 78bb(f)(5)(B). Here, Plaintiff seeks monetary damages on behalf of a putative class consisting of "all persons who were the beneficial owners of common shares of the Fund at any time from March 19, 2008 to the present."  (Compl. ¶¶ 1, 21, Prayer for Relief ¶ F)  In addition, the Complaint alleges that common questions of law or fact predominate over individualized questions.  (Compl. ¶ 22(b)) Consequently, the first element of SLUSA preclusion is satisfied.

B.      **State Law**

Plaintiff Bourrienne's Complaint purports to assert claims under state law for breach of fiduciary duty (Count I), aiding and abetting a breach of fiduciary duty (Count II), and unjust enrichment (Count III).  Neither Count I nor Count II invoke the law of any particular state, and thus presumably are brought under the law of the forum state, Illinois, where the Calamos Defendants are alleged to conduct business.  (Compl. ¶ 7)  Count III purports to assert a claim for unjust enrichment under the common law of Delaware.  (Compl. ¶ 66)  Consequently, the second requirement for SLUSA preclusion also is satisfied as to each Count of the Complaint.

C.      **Misrepresentations Or Omissions Of Material Fact**

As the allegations excerpted in Paragraph 5(d) of Defendants' Notice of Removal (Exhibit A hereto) demonstrate, the undeniable substance of Plaintiff's claim is that investors or prospective investors in Fund common shares were misled as to an "especially important" feature and "key element[]" of an investment in Fund shares beneficial to common shareholders.

(Compl. ¶¶ 25(a), 47)   The premise of the Complaint is that the Defendants misled common shareholders by representing that the financing provided by AMPS was "perpetual" in that the AMPS supposedly were "not redeemable," but then redeemed the AMPS and substituted assertedly less favorable financing in its place, ostensibly for the undisclosed purpose of serving the interests of the Calamos Sponsorship Group.   (Compl. ¶¶ 4, 25(a), 30, 34, 38, 44)   Stated differently, the Complaint alleges that the Defendants said the Fund would do one thing, and then caused it to do another for undisclosed, allegedly improper reasons.   *See Beckett v. Mellon Investor Servs, Inc.*, No. C06-5245, 2006 WL 3249189, *4 (W.D. Wash. Nov. 8, 2006), *aff'd in relevant part*, 329 Fed. Appx. 721 (9th Cir. 2009) (allegation that fees charged to plaintiff were not authorized by contract "implicitly allege[d] an omission of material fact").

Bourrienne does, to be sure, disclaim any intention to assert a claim for fraud or misrepresentation (Compl. ¶5) -- a disclaimer which has become a standard averment in complaints attempting to skirt SLUSA preclusion, and which is utterly ineffective to do so.   *Kurz v. Fid. Mgmt. & Research Co.*, No. 07 C 709, 2008 WL 2397582, *3 (S.D. Ill. June 10, 2008), *aff'd*, 556 F. 3d 639 (7th Cir. 2009) (recital in complaint "specifically disclaiming" any allegations of fraud, misrepresentation or omission was ineffective to avoid SLUSA preclusion); *Segal v. Fifth Third Bank*, 581 F.3d 305, 310-11 (6th Cir. 2009) ("a claimant does not have the . . . ability to disclaim the applicability of SLUSA to a complaint"); *Daniels v. Morgan Asset Mgmt., Inc.*, No. 09-cv-2800, 2010 WL 4024604, *6 (W.D. Tenn. Sept. 30, 2010) (disregarding express disclaimer of any relief based on "an untrue statement or omission of material fact in connection with the purchase, sale, or retention of a security"); *Korsinsky v. Salomon Smith Barney, Inc.*, No. 01-cv-6058, 2002 WL 27775, *4 (S.D.N.Y. Jan. 10, 2002) ("[a]lthough the complaint clearly states that '[t]his is not an action for fraud,' it outlines several instances of

alleged misrepresentations"). The most the disclaimer's presence signifies is Plaintiff's recognition that, absent an effective disclaimer, this action satisfies SLUSA's requirements.

Similarly, the Complaint's avoidance of the terms "misrepresentation" and "omission" has no bearing on SLUSA's application. In determining whether a plaintiff has alleged a misrepresentation within the meaning of SLUSA, courts look to the substance of a complaint's allegations, not to the use of any particular words. *Segal*, 581 F.3d at 310. A plaintiff cannot avoid SLUSA preclusion through artful pleading "that removes the covered words from the complaint but leaves the covered concepts." *Id.* at 311. In applying SLUSA, the courts look to "the realities underlying the claims," not how the claim is cloaked in a complaint. *Romano v. Kazacos*, 609 F. 3d 512, 523 (2d Cir. 2010); *see also Rabin*, 2007 WL 2295795, at *6 ("[a]ttempt by Plaintiffs to characterize their allegations of misrepresentation and omission of material facts as claims for breach of fiduciary duty and unjust enrichment is futile"); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 692-93 (S.D.N.Y. 2006) (holding that court "must look beyond the face of the complaint to analyze the substance of the allegations made," and concluding "that [p]laintiff's claim is a securities fraud wolf dressed up in a breach of contract sheep's clothing") (internal quotations omitted); *Beckett*, 2006 WL 3249189, at *3 (although there was "no explicit reference [in the complaint] to any fraudulent activity" such as a misrepresentation or omission of material fact, "[o]ne may infer that [p]laintiff has framed the pleading in an effort to avoid SLUSA preemption"); *Stoody-Broser v. Bank of America, N.A.*, No. C08-02705, 2009 WL 2707393, *2-3 (N.D. Cal. Aug. 25, 2009) (same).

The analysis applied in *Kircher v. Putnam Funds Trust*, 398 Ill. App. 3d 664 (5th Dist. 2010), is particularly instructive in light of Plaintiff Bourrienne's allegation that Defendants benefitted one class of shareholders at the expense of another. In *Kircher*, a putative class of

mutual fund shareholders alleged claims sounding in negligence and breach of fiduciary duty arising out of the allowance of short-term trading or "market timing" in the shares of the fund. 398 Ill. App. 3d at 667-68. The plaintiffs alleged that although the defendants operated a mutual fund with the stated goal of providing long term capital growth to investors who held shares of the fund, they followed portfolio valuation procedures which benefited short term traders at the expense of long-term shareholders. *Id.* The plaintiffs argued that SLUSA did not apply because their claims did not sound in misrepresentation or fraud. *Id.* at 670. The court disagreed, holding that "the plaintiffs' allegations are based, at least implicitly, on the defendants' failure to disclose ... their method of calculating … [net asset value] … and the fact that this method has a potential to reward market-timing investors at the expense of long-term investors." *Id.* at 673-74. The court reasoned that the complaint at bottom alleged a claim for misrepresentation or omission of material fact, noting that if the defendants had disclosed the risks and potential impact of market timing, there could be no claim for negligence or breach of duty. *Id.*

The same reasoning applies here. Plaintiff's Complaint alleges that the Fund made public statements indicating that AMPS were "not redeemable" and had a "perpetual term," a feature "especially important" and "significantly valuable" to the Fund's common shareholders, which made AMPS "a more attractive source of leverage than borrowing." (Compl. ¶ 25(a), 34, 44) Plaintiff complains that contrary to the representations about these and other benefits of AMPS, the Defendants caused the AMPS to be redeemed by the Fund in order to provide liquidity to the AMPS holders and to further the business objectives of the Calamos Sponsorship Group. (Compl. ¶¶ 36-38) This assertedly has "defeat[ed] an important aspect of the investment rationale for the common shareholders, i.e., that the Fund could 'put leverage to work' to provide cash flow for distribution to the common shareholders . . . ." (Compl. ¶¶ 47-48, 51(b)) These

allegations necessarily assume a purported failure to disclose that the AMPS might be, or would be, replaced with shorter term and/or higher cost leverage, since if such a disclosure had been made, no claim could exist.[7]  *Stoody-Broser*, 2009 WL 2707393, at *4 (purported breach of fiduciary duty claims assessed against trustee of assets invested in affiliated mutual funds inherently involved a failure of disclosure).[8]

In short, all that distinguishes Bourrienne's Complaint from a conventional securities fraud action is its reliance on state law in lieu of Rule 10b-5.  The Complaint thus presents a paradigm case for SLUSA preclusion.  *See, e.g., Rabin*, 2007 WL 2295795 at *6 (analyzing the substance of allegations of breach of fiduciary duty, the court found "that at the heart of the Amended Complaint is that Defendants misrepresented and omitted material facts related to the purchase of shares of the Fund").  Moreover, Bourrienne's allegations concerning the Fund's public statements are incorporated into each Count, requiring the dismissal of the Complaint in its entirety and with prejudice.  *Atkinson v. Morgan Asset Mgmt, Inc.*, 664 F. Supp. 2d 898, 907 (W.D. Tenn. 2009) (amendment of complaint would be futile "because allegations of omissions or other deceitful activity are irreparably interwoven throughout Plaintiffs' causes of action").

---

[7]  Defendants do not in any way concede that there was any failure of disclosure, or any misrepresentation of fact, concerning the uses and sources of leverage the Fund might employ, or as to any other matter alleged in the Complaint.  *See, e.g.,* the Independent Trustee Defendants' Supplemental Memorandum in Support of Joint Motion to Dismiss at p. 9, n. 5.

[8]  Plaintiff also claims that the Calamos Defendants received "fees and other revenues" as a result of the redemption and refinancing of the AMPS.  (Compl. ¶ 68)  Claims "for excessive fees caused by … investments … have been universally found to be preempted by SLUSA." *Stoody-Broser,* 2009 WL 2707393, at *4; *see also Beckett,* 2006 WL 3249189, at *4 (a "request for recovery of allegedly unlawfully obtained fees and charges … [on the] … sale of securities is subject to SLUSA preemption").

### D.    "In Connection With" The Sale Of Covered Securities

The common shares of the Fund are "covered securities" within the meaning of SLUSA. As defined in SLUSA, "covered securities" means "a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of Section 18(b) of the 1933 Act . . . at the time during which it is alleged that the misrepresentation . . . [or] . . . omission occurred . . . ." 15 U.S.C § 78bb(f)(5)(E).  Section 18(b) of the 1933 Act, in turn, defines a covered security to include securities listed on a national exchange, as well as securities issued by an investment company registered under the ICA.  15 U.S.C. § 77r(b)(1), (2).  Here, the Fund's common shares satisfy both standards:  the common shares are traded on the New York Stock Exchange, and they were issued by an investment company (the Fund) registered under the ICA.  (Compl. ¶ 23)  *Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1351 n. 2 (11th Cir. 2008) (shares issued by registered investment companies are "covered securities" under 15 U.S.C. § 77r(b)).

The Complaint also easily meets the requirement of SLUSA that a misrepresentation or omission of material fact be "in connection with" the purchase or sale of a covered security.  The Supreme Court has construed the "in connection with" requirement broadly, holding that "it is enough that the fraud alleged 'coincide' with a securities transaction -- whether by the plaintiff or by someone else."  *Dabit*, 547 U.S. at 85, 89.  That unquestionably is the case alleged here, where the Complaint asserts that the Fund filed SEC reports and made public pronouncements concerning the allegedly "perpetual" nature of AMPS financing that was "especially important" and "significantly valuable" to the Fund's common shareholders and a "benefit" and "key element[] of an investment in common stock of the Fund."  (Compl. ¶¶ 25(a), 34, 44, 47, 53)

The Complaint attempts to evade SLUSA preclusion by defining a class consisting of "owners," rather than purchasers or sellers, of the Fund's common shares.  (Compl. ¶¶ 1, 21)  The Supreme Court squarely rejected such an attempted end-run around SLUSA in *Dabit*,

holding that "[f]or purposes of SLUSA pre-emption, that distinction [between 'holders' and purchasers or sellers of securities] is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities." *Dabit*, 547 U.S. at 89.  Under *Dabit*, the inquiry focuses on the defendant's alleged conduct, rather than the identity of the plaintiff.  *Rabin*, 2007 WL 2295795, at *7.

## II.     The Exceptions To SLUSA Preclusion Have No Application

SLUSA excepts narrowly defined categories of cases from preclusion: (1) "an *exclusively derivative* action brought . . . on behalf of a corporation" 15 U.S.C. § 78bb(f)(5)(C) (emphasis supplied); and (2) certain cases brought under state law and involving a specific fact pattern.  15 U.S.C. § 78bb(f)(3).  Neither exception is applicable in this case.

### A.     <u>Plaintiff Has Not Brought An "Exclusively Derivative" Action</u>

The first SLUSA exception applies to "exclusively derivative" actions.  Typically, a derivative case is one brought by a shareholder in the name of a corporation, seeking to obtain for the corporation redress for some harm that the corporation allegedly has suffered.  *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1035 (Del. 2004).  In contrast to a direct claim, where the injury suffered is the claimant's alone, "independent of any alleged injury to the corporation," a claim is derivative when the plaintiff cannot prevail without showing an injury to the corporation.  *Id.* at 1039;[9] *see also Kramer v. Western Pacific Indus. Inc.*, 546 A.2d 348, 353 (Del. 1988) (if the only injury to an investor is the indirect harm which consists of diminution in

---

[9]     "The question of whether a suit is derivative by nature or may be brought by a shareholder in his own right is governed by the law of the state of incorporation."  *Kennedy v. Venrock Assoc.*, 348 F.3d 584, 589 (7th Cir. 2003).  Although *Tooley* involved a corporation, rather than a mutual fund, the test set forth in *Tooley* also applies to the determination of whether a claim against a mutual fund must be brought directly or derivatively.  *See Hogan v. Baker*, No. 305 cv 0073P, 2005 WL 1949476 (N.D. Tex. Aug. 12, 2005).

the value of his or her shares, the suit must be derivative); *Diana Allen Life Ins. Trust v. BP P.L.C., et al.*, No. 06 Civ 14209, 2008 WL 878190, *5 (S.D.N.Y. Mar. 31, 2008) (action under Delaware law based on a reduction in royalty payment to trust unit holders was derivative because "[a]ny loss in royalty interest as a result of the [alleged conduct] . . . flowed directly to the Trust, and only indirectly to the Unit Holders").

In many ways, this is the sort of harm that Plaintiff Bourrienne pleads in his Complaint here:  all his claimed injuries flow from alleged harm to the Fund, as a result of an asserted increase in the Fund's cost of leverage and other disadvantages to the Fund ostensibly resulting from debt financing.  (*See, e.g.,* Compl. ¶¶ 42-45, 47, 51(a))  But in other respects, Plaintiff's Complaint makes clear that this case is not brought as an "exclusively derivative" action within the meaning of SLUSA.  (Compl. ¶¶ 1, 21)  For one thing, the Complaint itself is styled as a class action, not a derivative suit.  (Comp. ¶¶ 1, 21) For another, Plaintiff does not and cannot allege that he has made any attempt to meet the demand requirement (discussed in the Independent Trustee Defendants' Supplemental Memorandum in Support of Joint Motion to Dismiss at 3-4) for filing a derivative case.  Consequently, the exception of "exclusively derivative" actions from SLUSA's preemptive reach has no application to the Complaint. *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1346 (S.D. Fla. 2007) (where plaintiff failed to allege it had met the Rule 23.1 requirements for a derivative action and had not styled its action as a derivative suit, case did not qualify for exception to SLUSA).

## B.    The SLUSA Exception Defined In 15 U.S.C. § 78bb(f)(3) Does Not Apply

The second exception to SLUSA preclusion is equally inapplicable.  It provides that a "covered class action . . . that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained" in state or federal court *if* the case involves:

(I)  the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

(II)  any recommendation, position, or other communication with respect to the sale of securities of an issuer that--

(aa)  is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

(bb)  concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 78bb(f)(3)(A).  This provision, referred to as the "Delaware carve-out," was adopted to exempt from SLUSA preclusion shareholder litigation that is based on a breach of the duty of disclosure in connection with an issuer's purchase or sale of securities to or from existing shareholders, or in connection with communications with existing shareholders with respect to the matters described in the exemption.  S. Rep. No. 105-182, at 6 (1998), *available at* 1998 WL 226714; H.R. Conf. Rep. No. 105-803, at 14 n.2 (1998), *available at* 1998 WL 703964.  Neither subsection of the Delaware carve-out has any application here.

The first Delaware carve-out is inapplicable for the reason that there is no allegation, nor could there be, that the common shares "owned" by members of the putative class during the class period were sold "exclusively … to holders of equity securities of the issuer," as the carve-out requires.  15 U.S.C § 78bb(f)(3)(A)(ii)(I).  "If the shares are offered or traded in the open market," as is the case here, "the Delaware carve-out exception is not met."  *G.F. Thomas Investments, L.P. v. Cleco Corp.*, 317 F. Supp. 2d 673, 682 (W.D. La. 2004); *see also Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 604 (D. Del 2002) (because public offerings of partnership units "unquestionably involved a purchase or sale to prospective unitholders, not simply those who already owned . . . units, the exception cannot apply"); *Sullivan v. Holland &*

*Knight LLP*, No. 09 C 531, 2010 WL 1558553, *6-7 (M.D. Fla. Mar. 31, 2010) (first Delaware carve-out did not apply where alleged misrepresentations were made to prospective investors).

Plaintiff may attempt to argue that the first Delaware carve-out applies nonetheless because the Fund redeemed AMPS from AMPS holders.  Such an argument would fail, for several reasons.  For one thing, the AMPS owners are not alleged to have been injured in any way by the misrepresentations alleged in Bourrienne's Complaint.  To the contrary, AMPS owners are alleged to have *benefitted* from the redemption of their AMPS (Compl. ¶¶ 38, 50), and consequently no claim is or could be brought on their behalf.  Plaintiff cannot evade the preclusive effect of SLUSA by bringing a putative class action on behalf of *one* class of security holders, and then relying upon transactions with *another* class of security holders to escape preclusion.  *Sullivan*, 2010 WL 1558553, at *6-7 (Delaware carve-out did not apply where plaintiff, suing on behalf of a putative class of initial purchasers of partnership interests, made no claim involving the purchase or sale of interests from or to existing investors).  Permitting a plaintiff to evade preclusion in this matter would contravene the Supreme Court's admonition that SLUSA preclusion is to be construed broadly.  *Atkinson,* 664 F. Supp. 2d at 905 ("Broadly interpreting . . . the first Delaware Carve-Out would . . . contravene the Supreme Court's holding in *Dabit* that courts are to read SLUSA's preclusion provisions broadly").

Furthermore, the first Delaware carve-out applies only to "[t]he purchase or sale of securities by the issuer . . . ."  15 U.S.C. § 78bb(3)(A)(ii)(I).  Here, the AMPS were *redeemed*, not purchased, by the Fund.  (Compl. ¶¶ 4, 34, 36-41)  A redemption of securities is legally and practically different from a purchase.  A purchase transaction is consensual, and therefore confronts a shareholder with an investment decision, *i.e.*, whether or not to sell his or her shares at the price offered by a prospective purchaser.  Consequently, the adequacy and completeness of

disclosures is a relevant consideration where, for example, an issuer offers to purchase its own shares from investors. In contrast, the AMPS redemption was non-consensual; holders of AMPS had no choice in the matter once the Fund determined to redeem their AMPS.[10]

The Seventh Circuit identified another distinction between purchases and redemptions of shares in the process of construing the terms "redeem" and "redemption," as used in the Internal Revenue Code of 1986, as amended:

> "Redemption in this section, we believe, connotes something other than repurchase; it includes the idea of a surrender of shares by a stockholder and a retirement of that which he surrenders . . . .
>
> A true redemption of stock, preferred or common, occurs when it is called and retired. The stockholder, in such instance, receives the redemption money in discharge of his shares which are thereby thereafter without legal existence. On the other hand, when a corporation purchases its own capital stock it deals in the shares as it might have done in the stock of another corporation."

*Comm'r of Internal Revenue v. Snite*, 177 F.2d 819, 823 (7th Cir. 1949). Here the allegations of the Complaint make clear that the redemption of the AMPS was a "true redemption," not a purchase, of the AMPS: the Complaint universally (and correctly) refers to the Fund's "redemption" of its AMPS, never to the "purchase" of AMPS, and an essential premise of the Complaint is that once having been redeemed, the asserted benefits of AMPS financing were forever lost to the Fund (*i.e.*, unlike stock purchased by an issuer, AMPS that have been redeemed cannot be sold to new investors). (*See, e.g.,* Compl. ¶¶ 4, 34, 36-41, 49)

---

[10] *See* Prospectus, Calamos Convertible Opportunities and Income Fund, filed with the SEC on November 13, 2003, at 41 (referenced in paragraph 2 of the Complaint), *available at* http://www.sec.gov/Archives/edgar/data/1171471/000095013703005922/c79259fe497.txt (stating that in the event the Fund redeems AMPS, it is "without the consent of the holders of AMPS"). The Supreme Court has approved consideration of documents referenced in a complaint on a motion to dismiss. *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Moreover, the distinction between "purchases" and "redemptions" of shares is maintained in the ICA, which governs the Fund. (Compl. ¶ 23) In *S.E.C. v. Sterling Precision Corp.*, 393 F.2d 214, 217-20 (2d Cir. 1968), the Second Circuit considered whether a corporation's redemptions of bonds and preferred stock constituted a "purchase" of securities under Section 17(a) of the ICA. The Court began with the observation that "the normal discourse of lawyers sets redemptions apart from purchases," a distinction recognized by Delaware statute, case law, and other authorities. *Sterling*, 393 F.2d at 217. It went on to conclude that "Congress would not have meant to include total redemptions or pro rata ones" within the term "purchase" in Section 17(a). *Id.* at 218; *see also* 8 Del. C. § 160 (separately referencing, and thereby distinguishing, purchases and redemptions of shares by the corporate issuer). The Delaware Statutory Trust Act, Section 3818, similarly distinguishes between purchases and redemptions of beneficial interests in a trust, stating: "[A] statutory trust may acquire, by purchase, redemption or otherwise, any beneficial interest in the statutory trust held by a beneficial owner of the statutory trust." 12 Del. C. § 3818.

Finally, the second Delaware carve-out (relating to communications concerning decisions of equity holders with respect to voting their securities, responding to a tender or exchange offer, or exercising dissenters' or appraisal rights) can have no conceivable application here, since Bourrienne's Complaint contains no allegations respecting any such communications. *Fisher v. Kanas*, 487 F. Supp. 2d 270, 280 (E.D.N.Y. 2007) (although complaint sufficiently alleged a misrepresentation "in connection with" the purchase or sale of a covered security, it did not allege a recommendation or communication regarding the sale of securities).

## **CONCLUSION**

The Complaint in this case is a paradigm of the kind of action which SLUSA was enacted to address, and to extinguish. It is a Complaint which, if brought as a class action prior to the adoption of the PSLRA, undoubtedly would have been filed under the federal securities laws, and which now masquerades in state law costume only to avoid the strictures of that Act. SLUSA squarely applies to, and precludes, Plaintiff's purported state law class action.

For the foregoing reasons, each of the claims asserted in Plaintiff Bourrienne's Complaint should be dismissed with prejudice.

Dated:    December 3, 2010

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: 312.372.1121
Facsimile: 312.345.9060


Christian J. Mixter *(pro hac vice)*
Patrick D. Conner *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.739.3000
Facsimile: 202.739.3001

Kevin B. Dreher
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: 312.324.1000
Facsimile: 312.324.1001

Respectfully submitted,

Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers and David D. Tripple

By:  /s/ John W. Rotunno
            One of their attorneys


Defendants John P. Calamos, Sr., Calamos Advisors LLC, and Calamos Asset Management, Inc.

By:  /s/ Christian J. Mixter
            One of their attorneys

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RUSSELL BOURRIENNE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| JOHN P. CALAMOS, SR., Trustee of the Calamos Convertible Opportunities and Income Fund, WESTON W. MARSH, Trustee of the Calamos Convertible Opportunities and Income Fund, JOE F. HANAUER, former Trustee of the Calamos Convertible Opportunities and Income Fund, JOHN E. NEAL, Trustee of the Calamos Convertible Opportunities and Income Fund, WILLIAM R. RYBAK, Trustee of the Calamos Convertible Opportunities and Income Fund, STEPHEN B. TIMBERS, Trustee of the Calamos Convertible Opportunities and Income Fund, DAVID D. TRIPPLE, Trustee of the Calamos Convertible Opportunities and Income Fund, CALAMOS ADVISORS, LLC, an investment advisor and Delaware limited liability company, CALAMOS ASSET MANAGEMENT, INC, a Delaware corporation and publicly held holding company, and JOHN AND JANE DOES 1-100, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441 AND 1446 PURSUANT TO SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998 |
| Defendants. | ) ) ) ) ) | |

### NOTICE OF REMOVAL

Pursuant to the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §§ 77p

and 78bb ("SLUSA"), and 28 U.S.C. §§ 1441 and 1446, defendants John P. Calamos, Sr.,

Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers, David

D. Tripple, Calamos Advisors LLC, and Calamos Asset Management, Inc ("Defendants"), by

their respective attorneys, hereby give notice of the removal of this action to the United States District Court for the Northern District of Illinois.

As grounds for removal, Defendants state as follows:

1.       On September 14, 2010, plaintiff Russell Bourrienne filed an action in this Court against Calamos Convertible Opportunities and Income Fund (the "Fund") and each of the Defendants herein, which was assigned United States District Court for the Northern District of Illinois Case No. 1:10-cv-5833.  The Complaint in that action contained similar allegations, and pleaded the same claims as, the Complaint in the instant action.[1]  Case No. 1:10-cv-5833 was dismissed voluntarily by plaintiff on October 7, 2010.

2.       Plaintiff refiled his action in the Circuit Court of Cook County, Illinois, on October 15, 2010, where it was assigned Case No. 10 CH 45119.  Counsel for the respective Defendants accepted service of the Complaint in the Cook County action on October 19, 2010.  This Notice of Removal is filed within thirty days of such date, in accordance with 28 U.S.C. § 1446(b).

3.       The Complaint in this action alleges that plaintiff Russell Bourrienne owns common shares issued by the Fund, which is a Delaware statutory trust and a closed-end investment company registered under the Investment Company Act of 1940, as amended (the "ICA").  (Compl. ¶¶ 1-2)  Defendant Calamos Advisors LLC is alleged to be the investment advisor to the Fund, and defendant Calamos Asset Management, Inc. is alleged to be a holding company affiliated with Calamos Advisors LLC.  (Compl. ¶¶ 18, 19)  Defendants Weston Marsh, Joe Hanauer, John Neal, William Rybak, Stephen Timbers and David Tripple are current or former Trustees of the Fund.  (Compl. ¶¶ 9-15)  Defendant John Calamos, Sr. is a Trustee of

---

[1]       However, unlike its predecessor, the Complaint in the instant action does not name the Fund as a defendant.

the Fund, as well as an employee of what the Complaint refers to as the "Calamos Sponsorship Group," *i.e.*, defendants Calamos Advisors, LLC, Calamos Asset Management Corporation, and unidentified affiliates of those companies.  (Compl. ¶¶ 9, 26, 29)  The Complaint also purports to be brought against unknown defendants identified fictitiously as "John and Jane Does 1-100."  (Compl. ¶ 16)

## Jurisdiction Pursuant to SLUSA

4.     SLUSA permits the removal of, and precludes, actions meeting four conditions. SLUSA applies where: (1) the underlying suit is a "covered class action"; (2) the action is based upon state statutory or common law; (3) the action concerns a "covered security"; and (4) the case alleges "a[n] untrue statement or omission of a material fact in connection with the purchase or sale of a covered security," or that the defendant "used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b), (c); 15 U.S.C. § 78 bb(f)(1), (2).[2]

5.     Each of SLUSA's requirements for removal and preclusion is met in this case in that:

(a)     This case constitutes a "covered class action" within the meaning of 15 U.S.C. § 78 bb(f)(5)(B), in that the Complaint purports to seek damages on behalf of a putative class consisting of more than 50 persons (Compl ¶¶ 21-22, 57-58, 63-64, 71, Prayer for Relief ¶ F);[3]

---

[2]     SLUSA added parallel provisions to the Securities Act of 1933 and the Securities Exchange Act of 1934.  For ease of reference, all further citations to SLUSA in this Notice of Removal will be to the provisions of SLUSA appearing in the 1934 Act.

[3]     The Defendants in this case, together with the Fund, have removed a case brought by another of the Fund's common shareholders, who purports to represent the same class.  That case, captioned *Brown v. Calamos*, *et al.*, United States District Court for the Northern District of Illinois, Docket No. 10-cv-6558, has been assigned to District Judge Elaine E. Bucklo.

(b)     The Complaint purports to be based upon the statutory or common law of a state rather than upon federal law (Compl., Count I, purporting to plead a cause of action for "Breach of Fiduciary Duty"; Count II, purporting to plead a cause of action for "Aiding and Abetting a Breach of Fiduciary Duty"; Count III, purporting to plead a cause of action for "Unjust Enrichment");

(c)     The Complaint purports to assert claims on behalf of owners of the Fund's common shares, which constitute "covered securities" within the meaning of SLUSA both because the common shares of the Fund are listed on the New York Stock Exchange and because the common shares are securities issued by an investment company registered under the Investment Company Act of 1940, thereby satisfying the standards of Section 18(b)(1), (2) of the Securities Act of 1933, 15 U.S.C. § 77r(b)(1), (2) (Compl. ¶¶ 1, 2, 21);

(d)     The Complaint alleges misrepresentations or omissions of material fact in connection with the purchase or sale of covered securities, *i.e.*, the common shares issued by the Fund.  More specifically, the Complaint alleges, *inter alia*:

(i)     That the Fund filed reports with the Securities and Exchange Commission representing that the Fund's primary investment objective is to "provide total return through a combination of capital appreciation and current income" (Compl. ¶ 23);

(ii)    That the Fund's SEC filings described its "Ability to Put Leverage to Work" as an advantage of the Fund which was "important to its common shareholders" (Compl. ¶ 25(d));

(iii)    That to achieve financial leverage, the Fund issued auction market preferred shares ("AMPS," sometimes referred to in the Complaint as "ARS"), which provided "favorable" financing for the Fund's common shareholders  (Compl. ¶¶ 25);

(iv)    That the Fund made public statements indicating that the term of the AMPS was perpetual, a feature "especially important" and "significantly valuable" to the Fund's common shareholders, which made AMPS "a more attractive source of leverage than borrowing" (Compl. ¶¶ 25(a), 44);

(v)    That notwithstanding these alleged representations, the Defendants caused the AMPS to be redeemed by the Fund in order to provide liquidity to the holders of AMPS following the collapse of the auction market for AMPS in February 2008 and, ostensibly, to further the business objectives of the Calamos Sponsorship Group (Compl. ¶¶ 36-38);

(vi)    That in order to fund redemption of the AMPS, the Individual Defendants caused the Fund to incur debt on terms "disadvantageous compared with AMPS" (Compl. ¶ 42);

(vii)    That the redemption of the AMPS has impaired the Fund's stated advantage to common shareholders—its ability to "put leverage to work" and "earn positive returns on leverage," one of the "key elements of an investment in common stock of the Fund"  (Compl. ¶¶ 25(d), 47);

(viii)    That the redemption of the AMPS caused damage to "common shareholders who invest in the Fund based in part on the expectation that they will receive dividend payments," which now assertedly "have been

reduced because funds that would otherwise have been available to pay such dividends have been diverted to pay the increased costs associated with the Replacement Borrowing and/or to fund the redemption of AMPS" (Compl. ¶¶ 47-48, 51(a));

(ix)  That the redemption of the AMPS "defeat[ed] an important aspect of the investment rationale for the common shareholders, i.e., that the Fund could 'put leverage to work' to provide cash flow for distribution to the common shareholders" (Compl. ¶51(b)); and

(x)  That as a consequence of the foregoing, the value of the Fund's common shares owned by members of the putative class assertedly has been reduced  (Compl. ¶ 51(d)).

6.  None of the exceptions to SLUSA preclusion are applicable in that:

(a)  This action was not brought as "an exclusively derivative action" within the meaning of 15 U.S.C. § 78bb(f)(5)(C);

(b)  Without limitation, this is not an action based upon the statutory or common law of the state in which the Fund is organized involving:

(i)  the "purchase or sale of securities" by the issuer or an affiliate of the issuer "exclusively from or to holders of equity securities of the issuer," within the meaning of 15 U.S.C. § 78bb(f)(3)(A)(ii)(I), or

(ii)  any "recommendation, position, or other communication with respect to the sale of securities" made by or on behalf of the issuer or an affiliate of the issuer and concerning decisions of equity holders of such securities with respect to "voting their securities, acting in response to a tender or

exchange offer, or exercising dissenters' or appraisal rights," 15 U.S.C. § 78bb(f)(3)(A)(ii)(II);

(c)     this is not an action brought by a State, a political subdivision thereof, or a State pension plan on its own behalf, or as a member of a class comprised solely of other States, political subdivisions, or State pension plans (15 U.S.C. § 78bb(f)(3)(B)); and

(d)     this is not an action that seeks to enforce a contractual agreement between an issuer and an indenture trustee (15 U.S.C. § 78bb(f)(3)(C)).

7.      <u>Proper Venue.</u>  The Northern District of Illinois, Eastern Division, is the federal district court for the district and division encompassing Cook County, Illinois, in which the action was brought, and removal to this Court therefore is proper pursuant to 28 U.S.C. § 1446(a).

8.      <u>Consent to Removal.</u>  All named defendants in this case have joined in this Notice of Removal.  For purposes of removal, defendants sued under fictitious names, such as defendants "John and Jane Does 1-100" in this action, are disregarded.  *See, e.g.*, *General Cas. Co. of Ill. v. Professional Mfrs. Representatives*, No. 08 C 6650, 2008 WL 4968847, *1 (N.D. Ill. Nov. 24, 2008).

9.      <u>Pleadings and Process.</u>  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings and orders served upon the defendants in Circuit Court of Cook County, Illinois, Case No. 10 CH 45119, are appended as Exhibit A to this Notice of Removal.

10.      <u>Filing and Notice.</u>  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Cook County and served upon plaintiff's counsel of record.

Dated: November 12, 2010

Defendants Weston W. Marsh, Joe F.
Hanauer, John E. Neal, William R. Rybak,
Stephen B. Timbers, and David D. Tripple

By: _____/s/ John W. Rotunno_____

John W. Rotunno

*One of their attorneys*

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone: 312.372.1121
Facsimile: 312.827.8000

Defendants John P. Calamos, Sr., Calamos
Advisors LLC, and Calamos Asset
Management, Inc.

By:        /s/ Michael F. Derksen

                  Michael F. Derksen
                  *One of their attorneys*

Kevin B. Dreher
Michael F. Derksen
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: 312.324.1000
Facsimile: 312.324.1001

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that he caused true and correct copies of the foregoing Notice of Removal, including all attachments thereto, to be served upon:

> Leigh Lasky
> Norman Rifkind
> 350 North LaSalle Street, Suite 1320
> Chicago, Illinois 60654

by messenger delivery, and upon:

> Brian P. Murray
> Murray, Frank & Salier LLP
> 275 Madison Avenue, Suite 801
> New York, NY 10016

by placing copies of such documents in a properly addressed envelope, with prepaid first-class postage affixed, and depositing said envelope in the United States Mail chute located at 70 West Madison Street, Chicago, Illinois, all on November 12, 2010.


        /s/  John W. Rotunno
           John W. Rotunno