**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RUSSELL BOURRIENNE, individually and on )
behalf of all others similarly situated, )
                                   )
          Plaintiff, )     Case No. 10-cv-07295
                                     )
          v. )     Judge Robert M. Dow, Jr.
                                       )
JOHN P. CALAMOS, SR., Trustee of the )     Magistrate Judge Susan E. Cox
Calamos Convertible Opportunities and Income )
Fund, et al., )
                                     )
          Defendants. )
                                     )

**JOINT REPLY MEMORANDUM IN SUPPORT OF THE**
**INDEPENDENT TRUSTEE DEFENDANTS' AND THE CALAMOS**
**DEFENDANTS' MOTION TO DISMISS**

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone: 312.372.1121
Facsimile: 312.827.8000

   *Attorneys for defendants*
   *Weston W. Marsh, Joe F. Hanauer,*
   *John E. Neal, William R. Rybak,*
   *Stephen B. Timbers and David D. Tripple*

Christian J. Mixter (*pro hac vice*)
Patrick D. Conner (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.739.3000
Facsimile: 202.739.3001

Kevin B. Dreher
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: 312.324.1000
Facsimile: 312.324.1001

   *Attorneys for defendants John P. Calamos, Sr.,*
   *Calamos Advisors LLC and Calamos Asset*
   *Management, Inc.*

# TABLE OF CONTENTS

Page

ARGUMENT...................................................................................................................... 1

I.   SLUSA PRECLUDES THIS ACTION IN ITS ENTIRETY ............................................. 1

II.  ALTERNATIVELY, IF PLAINTIFF'S CLAIMS ARE NOT PRECLUDED, THE
     COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)................. 4

     A.   Any Claims Surviving SLUSA Preclusion Are Derivative In Nature, And
          Should Be Dismissed For Failure To Make Demand ...............................................4

     B.   Count I Should Be Dismissed Pursuant To Rule 12(b)(6) On The Alternative
          Ground That It Fails To State A Claim For Breach Of Fiduciary Duty .................6

     C.   Counts II And III Do Not State Claims Against The Calamos Defendants...........11

          1.   Plaintiff's Allegations Of Aiding And Abetting A Breach Of
               Fiduciary Duty Fail To Satisfy The Applicable Pleading Standards........11

          2.   Plaintiff Fails To Allege Facts Showing That The Calamos
               Defendants Unjustly Received A Benefit To His Detriment....................14

CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Mut. Funds Fee Litig.,*
  No. CV 04-5593, 2005 WL 3989803 (C.D. Cal. Dec. 16, 2005) .................................... 10

*Ashcroft v. Iqbal,* __ U.S. __,
  129 S. Ct. 1937 (2009) ................................................................................... 12

*Beckett v. Mellon Investor Servs, Inc.,*
  No. C06-5245, 2006 WL 3249189 (W.D. Wash. Nov. 8, 2006), *aff'd in relevant
  part*, 329 Fed. Appx. 721 (9th Cir. 2009) ............................................... 3

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................... 12

*Bonte v. U.S. Bank, N.A.*
  624 F.3d 461 (7th Cir. 2010) .......................................................................... 11

*Cargill, Inc. v. JWH Special Circumstance LLC,*
  959 A.2d 1096 (Del. Ch. 2008) .......................................................................... 7

*Cement-Lock v. Gas Tech. Inst.,* No. 05-C-0018,
  2007 WL 4246888 (N.D. Ill. Nov. 29, 2007) .................................................... 15

*Cinerama, Inc. v. Technicolor, Inc.,*
  663 A.2d 1134 (Del. Ch. 1994) ........................................................................... 7

*Daniels v. Morgan Asset Mgmt., Inc.,*
  No. 09-cv-2800, 2010 WL 4024604 (W.D. Tenn. Sept. 30, 2010) .................................... 3

*Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.,*
  No. Civ.A. 379-N, 2005 WL 1713067 (Del. Ch. July 13, 2005) ........................................ 5

*Diana Allen Life Ins. Trust v. BP P.L.C., et al.,*
  No. 06 Civ 14209, 2008 WL 878190 (S.D.N.Y. Mar. 31, 2008) ........................................ 5

*Estate of Howell,*
  No. 117657, 2002 WL 31926604 (Del. Ch. Dec. 20, 2002) ............................................... 8

*Foster v. DeLuca,*
  545 F.3d 582 (7th Cir. 2008) ............................................................................. 6

*Gatz v. Ponsoldt,*
  925 A.2d 1265 (Del. 2007) ................................................................................ 12

*Globis Partners, L.P. v. Plumtree Software, Inc.,*
  No. 1577, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007) .................................................... 9

*In re Fruehauf Trailer Corp. v. Chriss Street,*
    431 B.R. 838 (Bank. C.D. Cal. 2010) ........................................................................ 9

*In re Lukens Inc. S'holders Litig.,*
    757 A.2d 720 (Del. Ch. 1999) .................................................................................. 12

*In re Santa Fe Pac. Corp. S'holder Litig.,*
    669 A.2d 59 (Del. 1995) .......................................................................................... 13

*Kramer v. W. Pac. Indus. Inc.,*
    546 A.2d 348 (Del. 1988) .......................................................................................... 5

*Krim v. ProNet, Inc.,*
    744 A.2d 523 (Del. Ch. 1999) .................................................................................. 10

*Kurz v. Fid. Mgmt. & Research Co.,*
    No. 07-cv-709, 2008 WL 2397582 (S.D. Ill. June 10, 2008), *aff'd*, 556 F. 3d 639
    (7th Cir. 2009) ........................................................................................................... 2

*Kutten v. Bank of America, N.A.,*
    530 F.3d 669 (8th Cir. 2008) ..................................................................................... 3

*Lewis v. Straetz,*
    1986 WL 2252 (Del. Ch. Feb. 12, 1986) ................................................................ 10

*Navellier v. Sletten,*
    262 F.3d 923 (9th Cir. 2001) ..................................................................................... 9

*Off v. Ross,*
    No. 3468-VCP, 2008 WL 5053448 (Del. Ch. Nov. 26, 2008) .......................... 9, 10

*Segal v. Fifth Third Bank,*
    581 F.3d 305 (6th Cir. 2009) .................................................................................. 2, 4

*Shaper v. Bryan,*
    371 Ill. App. 3d 1079 (1st Dist. 2007) ................................................................. 9, 10

*Stegemeier v. Magness,*
    728 A.2d 557 (Del. 1999) .......................................................................................... 7

*Teachers Ret. Sys. of La. v. Aidinoff,*
    900 A.2d 654 (Del. Ch. 2006) ................................................................................. 13

*Technicorp Int'l II, Inc. v. Johnston,*
    No. Civ. A. 15084, 2000 WL 713750 (Del. Ch. May 31, 2000) ............................. 9

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
    845 A. 2d 1031 (Del. 2004) ....................................................................................... 5

**Statutes**

Delaware Statutory Trust Act,
     12 Del. C. § 3806 ........................................................................................................ 6

Securities Litigation Uniform Standards Act of 1998,
     15 U.S.C. § 78bb(f)(1) .......................................................................................... passim

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................... 4, 6, 11

The Independent Trustee Defendants and the Calamos Defendants, by their respective attorneys, respectfully submit this Reply Memorandum in response to Plaintiff's Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss ("Pl's Opp.") and in further support of their Joint Motion to Dismiss the Complaint in this action.[1]

## ARGUMENT

### I.  SLUSA PRECLUDES THIS ACTION IN ITS ENTIRETY

The essential, and dispositive, first question in this case is whether Plaintiff's putative class claims are precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  Plaintiff does not dispute that three of the four conditions to SLUSA preclusion are satisfied in this case.  (Pl's Opp. at 9-11)  Thus, it is uncontested that this *is* a "covered class action"; that the action *is* based upon state law; and that the case *does* concern a "covered security" (*i.e.,* Fund common shares).  Plaintiff contests only whether the fourth element of SLUSA preclusion is satisfied, *i.e.,* whether the Complaint contains allegations of a misrepresentation or omission of material fact in connection with the purchase or sale of Fund common shares.  The Complaint unequivocally satisfies this condition, as well.

Defendants will not repeat here the detailed discussion of the Complaint's allegations appearing at pages 3-4, 7-8 and 10 of their Joint Memorandum.  Suffice it to say that Plaintiff alleges Defendants made public statements that AMPS were "perpetual" and "not redeemable by the holders of AMPS," but instead caused the Fund to redeem the AMPS in order to serve "economic interests" they supposedly shared with the Calamos Sponsorship Group.

---

[1]     Section II. C. of this Reply Memorandum is submitted on behalf of Defendants Calamos Advisers, LLC and Calamos Asset Management, Inc.  All Defendants join in the remainder of this Reply Memorandum.

(Compl. ¶¶ 4, 30, 34, 38, 44) The Complaint claims that redemption of the AMPS "frustrate[d] the ability of common shareholders to realize the benefits of an investment in the Fund, as described in the Fund's statements. . .[to]. . .the SEC and the public." (Compl. ¶¶ 39, 51(d), 53, 56)

Plaintiff's Opposition attempts to recharacterize his allegations, disclaiming any intention of asserting a claim "involv[ing] a misrepresentation or omission of *any* kind" and asserting that the Complaint "challenges the conduct, not any statements, of the Trustee Defendants. . . ." (Pl's Opp. at 10, 12)[2] Plaintiff's allegations concerning the Defendants' statements, he says, are "entirely factual in nature" and serve merely to "illustrate" that the terms of the AMPS were advantageous. These arguments fail, for several reasons.

First, the fact that the Complaint does not expressly characterize the statements attributed to Defendants as "misrepresentations" or as untrue is of no consequence. Courts have become accustomed to attempts to evade the application of SLUSA by the artful avoidance of the Act's terminology, and hold that such attempts are ineffective. *See, e.g., Kurz v. Fid. Mgmt. & Research Co.*, No. 07-cv-709, 2008 WL 2397582, *3 (S.D. Ill. June 10, 2008), *aff'd*, 556 F. 3d 639 (7th Cir. 2009) (complaint that "scrupulously avoid[ed] using the words fraud, misrepresentation, or omission" was nonetheless precluded by SLUSA); *Segal v. Fifth Third Bank*, 581 F.3d 305, 310-11 (6th Cir. 2009) (a claimant cannot "elude SLUSA's prohibitions by editing out the covered words" or using "artful pleading").

Second, Plaintiff's allegations that the redemption of the AMPS "frustrate[d] the ability of common shareholders to realize the benefits of an investment in the Fund, as described in the

---

[2]     Plaintiff accuses *Defendants* of "re-writ[ing] the Complaint. . . ." (Pl's Opp. at 11) But Defendants have not "re-written" Plaintiff's allegations; they have merely *quoted* them.

Fund's statements" and "eliminat[ed] one of the major benefits of the investment" in common

shares (Compl. ¶¶ 53, 56) illustrate the underlying premise of the Complaint, *i.e.*, that the Fund's

statements regarding the assertedly "perpetual" AMPS led investors to believe that the AMPS

*would not* be redeemed by the Fund. These and similar allegations elsewhere in the Complaint

simply make no sense unless it is assumed that investors were misled into believing that the

AMPS would never be redeemed. *See Beckett v. Mellon Investor Servs, Inc.*, No. C06-5245,

2006 WL 3249189, \*4 (W.D. Wash. Nov. 8, 2006), *aff'd in relevant part*, 329 Fed. Appx. 721

(9th Cir. 2009) (allegation that fees charged to plaintiff were not authorized by contract

"implicitly allege[d] an omission of material fact").

Third, Plaintiff's attempt to evade SLUSA by arguing that "the Complaint challenges the

conduct, not any statements, of the Trustee Defendants" also fails. (Pl's Opp. at 12) In *Kutten v.*

*Bank of America, N.A.*, 530 F.3d 669, 670-71 (8th Cir. 2008), another case involving claims for,

*inter alia*, breach of fiduciary duty, the Eighth Circuit observed that "SLUSA preemption is

based on the conduct alleged, not the words used to describe the conduct." To the same effect is

*Daniels v. Morgan Asset Mgmt., Inc.*, No. 09-cv-2800, 2010 WL 4024604, \*9 (W.D. Tenn. Sept.

30, 2010) (rejecting argument that claim was based on "what. . .defendants *did*," rather than on

their disclosures, observing that defendants' "undisclosed conflict of interest is precisely what

Plaintiffs argue caused Defendants to do what they 'did' ").

Finally, Plaintiff's efforts to marginalize his own allegations regarding the Fund's public

statements as "straight forward" and "entirely factual" background are wholly ineffectual. The

courts have rejected similar attempts to evade SLUSA by characterizing allegations as mere

background facts. *Segal*, 581 F.3d at 311 (contention that "the state-law claims do not depend

upon allegations of misrepresentation or manipulation -- and thus are not material to them" was unavailing). Consequently, the Complaint should be dismissed as precluded by SLUSA.

## II. ALTERNATIVELY, IF PLAINTIFF'S CLAIMS ARE NOT PRECLUDED, THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)

The Court need consider Defendants' alternative grounds for dismissal only in the event it determines that some portion of Plaintiff's claims survive SLUSA preclusion. In that event, any such surviving claims should be dismissed pursuant to Rule 12(b)(6).

### A. Any Claims Surviving SLUSA Preclusion Are Derivative In Nature, And Should Be Dismissed For Failure To Make Demand

Plaintiff does not dispute the requirement that a derivative plaintiff must make and plead board demand prior to filing suit, or allege with particularity the reasons why the plaintiff failed to make demand. Nor does Plaintiff dispute that if the purported injuries claimed in this action were sustained directly by the *Fund*, the claims at issue are derivative in nature.

Instead, Plaintiff asserts that Fund shareholders have suffered direct injury in that the dividends paid by the Fund have declined since 2007.[3] (Pl's Opp.at 8-9) But in making this assertion, Plaintiff is forced to concede (indeed, he affirmatively *argues*) that his claim is founded upon the allegedly higher cost *to the Fund* of substitute leverage (what he calls the

---

[3] Plaintiff attaches as Exhibit 1 to his Opposition a chart purporting to show the rate of dividends paid by the Fund, which he suggests makes it "clear that the perpetually higher cost of the Replacement Borrowing is at least partially responsible for the significant diminution of the Fund's common share dividend." (Pl's Opp. at 8) Putting aside the fact that dividends are discretionary, and may be paid or not paid "in order to permit the Fund to maintain a more stable level of distribution" (*see* the Calamos Defendants' Supplemental Memorandum at n. 6), what the chart actually shows is that the Fund's dividend rate already had been reduced in December 2007, *months before* the first AMPS redemption in June 2008, and that the more significant dividend reduction occurred *months later*, in November 2008 -- following the September 2008 collapse of Lehman Bros. and the consequent turmoil in the financial markets. The chart does not reflect any reduction in the dividend rate following the second AMPS redemption in August 2009. Thus, the chart fails to show any correlation between the AMPS refinancing and changes in the dividend rate.

"Replacement Borrowing") which "necessarily diminished the Trust's profits (and resulting dividends)" paid by the Fund. (Pl's Opp. at 8) Plaintiff's Opposition is replete with similar admissions. *See* Pl's Opp. at 5 (the "drastic reduction of the dividends corresponds directly with the higher cost of the Replacement Borrowing"); Pl's Opp. at 9 (the "Replacement Borrowing has, and will continue to, cost the Trust more than did the AMPS" and "[c]onsequently. . .the Trust's dividend has been. . .diminished"). *See also* Complaint, ¶¶ 51(a), (b).

As Plaintiff's own arguments demonstrate, he could not prevail on his purported state law claims without first showing increased costs or other harm to the Fund; his claims therefore are not "independent of any alleged injury" to the Fund, and by definition are derivative in nature, although not pleaded as such. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A. 2d 1031, 1039 (Del. 2004); *Kramer v. W. Pac. Indus. Inc.*, 546 A.2d 348, 353 (Del. 1988) (if the only injury to an investor is the indirect harm which consists of diminution in the value of his or her shares, the suit must be derivative); *see also Diana Allen Life Ins. Trust v. BP P.L.C., et al.*, No. 06 Civ 14209, 2008 WL 878190, *5 (S.D.N.Y. Mar. 31, 2008), cited at page 14 of the Defendants' Joint Memorandum but ignored in Plaintiff's Opposition.

Plaintiff cites *Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.*, No. Civ.A. 379-N, 2005 WL 1713067, at *8 n. 41 (Del. Ch. July 13, 2005), in support of his contention that his claims are direct. In *Deephaven*, however, "the harm. . .was suffered *only* by the affected shareholders and *not* by UGC [the corporation], which stood to receive equal proceeds regardless of the distribution." *Id*. at *8 (emphasis supplied). Thus, *Deephaven* did not involve claims of the type alleged here, in which Board action allegedly resulted in increased Fund costs, which in turn supposedly impacted dividend payments. Moreover, contrary to Plaintiff's characterization, *Deephaven* does not state that a cause of action "concerning" an allocation of resources favoring

one group of shareholders over another is "always" direct in nature (Pl's Opp. at 7); rather, the

court said only that "causes of action. . .for discrimination against specific shareholders have

*often* been found to be direct. . . ." 2005 WL 1713067, at *8 n.41 (emphasis supplied).

Plaintiff has failed to bring this case as a derivative action and failed to comply with the

demand and other requirements applicable to such suits. Accordingly, any claims that survive

SLUSA preclusion should be dismissed under the authorities cited at pages 3-4 of the

Independent Trustee Defendants' December 3, 2010 Supplemental Memorandum.[4]

**B.     Count I Should Be Dismissed Pursuant to Rule 12(b)(6) On The Alternative
Ground That It Fails To State A Claim For Breach Of Fiduciary Duty**

In their Supplemental Memorandum in Support of Defendants' Joint Motion to Dismiss,

the Independent Trustees demonstrated that the Complaint fails to plead a claim for breach of

fiduciary duty. In response, Plaintiff argues that trustees are held to a "*higher* standard of care"

than corporate directors (Pl's Opp. at 14), but the very decision he cites for this proposition is

careful to point out that the Delaware Statutory Trust Act authorizes provisions in the governing

instrument of a statutory trust that "'restrict,' or 'eliminate' whatever preexisting duties there

might be, except for the implied covenant of good faith and fair dealing." *Cargill, Inc. v. JWH*

---

[4]     Although Plaintiff asserts in note 15 of his Opposition that he "can establish demand futility," his Complaint does not make even a rudimentary allegation of demand futility. Recognizing this, Plaintiff cites *Foster v. DeLuca*, 545 F.3d 582, 583-84 (7th Cir. 2008), for the proposition that a motion to dismiss is not a responsive pleading and thus "does not eliminate the plaintiff's right to amend once as a matter of right." (Pl's Opp. at 7, n. 8) However, Rule 15(a) has been amended since *Foster*, and now precludes amendment without leave of court following the expiration of "21 days after service of a motion under Rule 12(b). . . ." The notes to the amendment state that if a motion pursuant to Rule 12(b) is filed, Rule 15(a) "will force the pleader to consider carefully and promptly the wisdom of amending. . . ." Plaintiff has, of course, elected thus far to stand on his pleading. In the event he thinks better of this decision, Defendants reserve the right to oppose any proposed amended complaint Plaintiff may attempt to file.

*Special Circumstance LLC*, 959 A.2d 1096, 1112 (Del. Ch. 2008).[5]   Therefore, it is the provisions of the Fund's Amended and Restated Declaration of Trust (the "Declaration") which govern the powers, duties and responsibilities of the Trustees in this case.

The Declaration provides, in Article IX, Section 9, that "fiduciary or other standards of responsibilities or limitations on the acts or powers of trustees, which are inconsistent with the limitations or liabilities or authorities and powers of the Trustees" shall "not be applicable to the Trust [or the] Trustees. . . ."  *See* the Independent Trustees' Supp. Memo. at 5, n. 4, 6. Moreover, this exclusion of "standards of responsibilities or limitations on the acts or powers of trustees" that are inconsistent with those defined in the Declaration extends to "*any provisions of the laws (statutory or common) of the State of Delaware. . .pertaining to trusts*" (emphasis supplied).  Incredibly, although Plaintiff purports to quote the "*full* text" of Section 9 at page 16 of his Response, his block quote *omits* this critical language, which makes clear that the provisions of the Declaration control over inconsistent statutory or common law, subject only to the Statutory Trust Act's prohibition on elimination of the covenant of good faith and fair dealing.  It is only this deliberate omission from the supposedly "full text" of the Declaration that permits Plaintiff to contend that the Declaration does not eliminate so-called "default" fiduciary duties.

As explained at pages 6-7 of the Independent Trustees' Supplemental Memorandum, the Declaration grants the Trustees the authority and power "[t]o borrow money;" "[t]o. . . *redeem*. . . Shares;" "to establish terms and conditions regarding. . .*redemption*. . .of. . .Shares;" and "to apply to any such. . . *redemption*. . .of Shares *any funds or property of the Trust*. . . ."

---

[5]   *Stegemeier v. Magness*, 728 A.2d 557 (Del. 1999), also cited by Plaintiff, involved a testamentary trust, not a statutory trust. *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134 (Del. Ch. 1994) did not arise under a trust, much less a statutory trust.

(Declaration, Art. II, Section 2(f), (v)) (emphasis supplied) Thus, no liability can exist under the Declaration for the supposed breach of duty alleged in the Complaint, which arises out of the exercise of a power expressly granted to the Trustees in the Declaration.

Plaintiff contends that these provisions do not "insulate" the Trustees from liability, citing *Estate of Howell*, No. 117657, 2002 WL 31926604 (Del. Ch. Dec. 20, 2002). (Pl's Opp. at 16-17) *Howell* is inapposite because the inter vivos trust in that case contained "no provision expressly limiting the scope" of the trustee's fiduciary duties (2002 WL 31926604 at *3) -- unlike the Declaration here, which expressly bars the imposition of "*fiduciary or other standards of responsibilities*" that are "inconsistent with the limitations or liabilities or *authorities and powers of the Trustees*" (emphasis supplied). Nor is there any indication in *Howell* that the trust agreement included a provision similar to Article IV, Section 2 of the Declaration, which *eliminates Trustee liability* except for actions taken in "willful misfeasance, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct of [their] office."

Plaintiff argues that he has pleaded allegations sufficient to meet this heightened standard, claiming that he has "properly pled that the Trustee Defendants were not acting in the best interest of the Trust Beneficiaries, and in breaching their duty of loyalty by redeeming the AMPS, they engaged in willful misfeasance and bad faith." (Pl's Opp. at 18) However, the Complaint lacks *any* reference to willful misfeasance or bad faith by the Trustees, or to the duty of loyalty. Nor does it allege any conduct that rises to the level of "willful misfeasance, bad faith, gross negligence, or reckless disregard" of the Trustees' duties.

Moreover, the redemption of the AMPS was a business decision -- one of many made by the Trustees in any given year. The business judgment rule, which is applicable to Delaware statutory trusts, protects such decisions from shareholder challenge absent "fraud, bad faith or

self-dealing in the usual sense of personal profit or betterment" by the Trustees. *Shaper v. Bryan*, 371 Ill. App. 3d 1079, 1087 (1st Dist. 2007) (applying Delaware law and affirming dismissal of complaint purporting to allege breaches of fiduciary duty against directors); *Off v. Ross*, No. 3468-VCP, 2008 WL 5053448, at *11 (Del. Ch. Nov. 26, 2008) (the "Court of Chancery generally affords conduct and decisions of the board of a Delaware business entity [in *Off*, a Delaware statutory trust] the protection of the business judgment rule"); *Navellier v. Sletten*, 262 F.3d 923, 946-49 (9th Cir. 2001) (trial court properly instructed jury on business judgment rule in an action against trustees of a mutual fund organized as a Delaware business trust).[6] A complaint lacking particularized allegations sufficient to overcome the presumptions afforded by the business judgment rule must be dismissed. *Shaper*, 371 Ill. App. 3d at 1088-89, 1095 ("plaintiffs have failed to allege sufficient facts to show that [the director] was self-interested in the merger"); *Globis Partners, L.P. v. Plumtree Software, Inc.*, No. 1577, 2007 WL 4292024, at *4 (Del. Ch. Nov. 30, 2007) ("[p]laintiff must allege sufficient facts to. . .overcome. . .[the business judgment rule] presumption").

There is no allegation in the Complaint that the Trustees actually received any benefit as a result of the conduct alleged here -- by, for example, causing the redemption of AMPS they personally owned, or in which they had a pecuniary interest.[7] Instead, the only allegations that

---

[6]     Citing an opinion of a California bankruptcy court, Plaintiff argues that the business judgment rule does not apply to Delaware statutory trusts. *See* Pl's Opp. at n.13, *citing In re Fruehauf Trailer Corp. v. Chriss Street*, 431 B.R. 838, 850 (Bank. C.D. Cal. 2010). The *Fruehauf* court, however, apparently refused to apply the business judgment rule on the erroneous assumption that the rule precludes liability even for self-dealing. *Id.*

[7]     *Technicorp Int'l II, Inc. v. Johnston*, which Plaintiff touts as "particularly instructive," is entirely inapposite. No. Civ. A. 15084, 2000 WL 713750, at *45 (Del. Ch. May 31, 2000). In *Technicorp*, the corporate fiduciaries diverted corporate loans and assets to themselves for their own personal use. *Id.* at *45-46. There are no such allegations here.

bear on the application of the business judgment rule are: (i) that the Trustees received remuneration for their work as Trustees, and "could" receive additional remuneration by serving on the boards of any new Calamos funds formed in the future (Compl. ¶¶ 28-29); and (ii) "[o]n information and belief," that the Trustees authorized the redemption of the AMPS to "further the business interests of the Calamos Sponsorship Group" (Compl. ¶ 38) and their own interests. (Compl. ¶ 30) These allegations are insufficient as a matter of law to overcome the presumption afforded by the business judgment rule.

A director's or trustee's interest in maintaining his or her position on a board has been rejected time and again as a basis for a finding of self-interest. *Shaper*, 371 Ill. App. 3d at 1088 (allegation that a director acted to retain his position insufficient to rebut the business judgment rule); *Am. Mut. Funds Fee Litig.*, No. CV 04-5593, 2005 WL 3989803, at *6 (C.D. Cal. Dec. 16, 2005) ("[c]laims like plaintiffs' claims. . .[against a Delaware statutory trust]. . .have been rejected where directors were members of many more funds' boards"); *Krim v. ProNet, Inc.*, 744 A.2d 523, 526-28 (Del. Ch. 1999) (rejecting claim that there was "substantial conflict" where certain directors retained "positions of prestige" by becoming directors of merged entity); *Lewis v. Straetz*, 1986 WL 2252, at *4-*5 (Del. Ch. Feb. 12, 1986) (dismissing complaint for alleged breach of fiduciary duty where director action was alleged to have been motivated by a desire to retain "their lucrative positions," observing that "[t]he mere fact that the directors are paid fees for their services. . .does not impugn their ability to act").

Because Plaintiff has failed to plead particularized facts sufficient to rebut the presumption afforded by the business judgment rule, the Trustees must be presumed to have acted independently, with due care, in good faith and in the honest belief that their actions were in the best interest of shareholders. *See Off*, 2008 WL 5053448, at *11; *Shaper*, 371 Ill. App. 3d

at 1087. Accordingly, Count I must be dismissed for this additional reason.[8]

### C.    Counts II And III Do Not State Claims Against The Calamos Defendants

Plaintiff's Response wholly disregards specific arguments made in the Calamos Defendants' Supplemental Memorandum which show that Counts II and III of the Complaint, alleging claims against the Calamos Defendants for aiding and abetting a breach of fiduciary duty and unjust enrichment, should be dismissed. Where Plaintiff has attempted to address the Calamos Defendants' arguments, he has done little more than simply restate the ineffective and conclusory allegations in the Complaint. Accordingly, Counts II and III against the Calamos Defendants should be dismissed under Fed. R. Civ. P. 12(b)(6). *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 464-66 (7th Cir. 2010) (affirming dismissal of complaint where plaintiff had merely restated its allegations and ignored defendant's substantive arguments).

### 1.    Plaintiff's Allegations Of Aiding And Abetting A Breach Of Fiduciary Duty Fail To Satisfy The Applicable Pleading Standards

Plaintiff's Response fails to address the inadequacies of the Complaint's aiding and abetting allegations. As discussed in the Calamos Defendants' Supplemental Memorandum, a

---

[8]    Plaintiff chides Defendants for ostensibly failing to argue "that the AMPS redemption benefited the Trust or its common shareholders in any appreciable way." (Pl's Opp. at 12) But it is not the Trustees' obligation to demonstrate that their actions proved beneficial; it is *Plaintiff's* burden to plead facts (not speculation, on "information and belief") giving rise to a reasonable inference that the Trustees' authorization of the AMPS redemption constituted a breach of duty. However, if Plaintiff demands a demonstration that the Trustees' decision to redeem the AMPS had a "rational business purpose," he need look no further than the Fund's SEC filings cited in his Complaint. Those filings disclose that the dividend rates on AMPS during the fiscal year ended October 31, 2008 ranged from 1.44% to 6.05%, while the average interest rate on the Fund's borrowings for the six months ended April 30, 2010 was only 1.22% -- below the low end of the range of AMPS dividend rates in fiscal year 2008. N-CSR for fiscal year ending October 31, 2008, filed December 29, 2008 (cited in Compl. ¶ 44), at 26, available at http://www.sec.gov/Archives/edgar/data/1171471/000095013708014575/c47839nvcsrs.htm; Form N-CSRS, filed June 24, 2010 (cited in Compl. ¶ 47), at 25, available at http://www.sec.gov/Archives/edgar/data/1171471/000095012310060619/c57471nvcsrs.htm.

bare recitation of legal elements is not sufficient to state a valid claim for aiding and abetting a breach of fiduciary duty. *See* Calamos Supp. Memo. at 3-5 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009)). Under both Illinois and Delaware law, a claim for aiding and abetting a breach of fiduciary duty requires that the alleged aider and abetter have "knowingly participated" in the fiduciary's breach of duty.[9] The broad allegations of the Complaint do not plead any factual content with respect to the Calamos Defendants' "knowing participation" in the alleged primary breach. Although the Complaint may identify *what* the Calamos Defendants "caused" (the redemption of the AMPS by the Fund) and *why* they allegedly "caused" it (purportedly, to further the business interests of the Calamos Sponsorship Group), it does not contain any facts as to *how* the Calamos Defendants supposedly did so.

Plaintiff argues that under Delaware law "knowing participation need not be pleaded with particularity," *see* Pl. Opp. at 20 n.22, but Plaintiff's own authority for this point recognizes that knowing participation "must be reasonably inferred from the facts alleged in the complaint." *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 734-35 (Del. Ch. 1999). The court in that case found that an allegation that defendant "approved and urged" others to engage in allegedly wrongful conduct, which is materially no different from the allegations against the Calamos Defendants, "does not satisfy this pleading burden." *Id.* Thus, Plaintiff's own cited authority recognizes that bare and conclusory references in a complaint do not allow a reasonable inference of knowing participation, and warrant dismissal of an aiding and abetting claim.

---

[9]     The choice of law issue that Plaintiff raises in footnote seven on page six of his Response is inconsequential because there is no substantive difference between Illinois and Delaware law on the issue of aiding and abetting liability. *See* Pl. Opp. at 19 (citing *Gatz v. Ponsoldt*, 925 A.2d 1265, 1275 (Del. 2007)).

Similarly, in *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59 (Del. 1995), a plaintiff alleged that a corporate defendant had "knowledge of the Individual Defendants' fiduciary duties and knowingly and substantially participated and assisted in the Individual Defendants' breaches of fiduciary duty." *Id.* at 72. The court found that this allegation was insufficient to state a claim for aiding and abetting a breach of fiduciary duty and affirmed the lower court's dismissal of the claim. *Id.* The language pleaded by the plaintiff in *Santa Fe Pac. Corp.* tracks the language of the Complaint in this case. *See* Compl. ¶¶ 61-62 (the Calamos Defendants "knew or reasonably should have known that the Individual Defendants were fiduciaries to the Plaintiff. . .and nonetheless willfully and knowingly encouraged and participated in the Individual Defendants' breaches of fiduciary duty"). The failure to plead specific facts giving rise to a reasonable inference of "knowing participation" on the part of the Calamos Defendants is fatal to Plaintiff's aiding and abetting claim.

Moreover, Plaintiff's pleading burden is not discharged by his statement, not found in the Complaint, that John Calamos holds "executive offices with each of the Calamos Defendants." Pl's Opp. at 20. Plaintiff has not alleged any acts that Mr. Calamos took in his capacity as an executive officer that might constitute "knowing participation" by the Calamos Defendants in the Trustees' supposed breach of fiduciary duty. Although Plaintiff cites the general proposition from *Teachers Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654 (Del. Ch. 2006), that knowledge of a corporate officer may be imputed to the corporation, Mr. Calamos has been named only in his capacity as a Trustee of the Fund, as opposed to his capacity as an executive officer of the Calamos Defendants; in contrast to the facts in *Aidinoff*, Mr. Calamos' acts as a Trustee of the Fund are not alleged to have been (and were not) acts taken as a "controlling person" of any of

the Calamos Defendants. Thus, *Aidinoff* is inapplicable, and Plaintiff's inadequate allegations related to Mr. Calamos cannot save his aiding and abetting claim.

### 2. Plaintiff Fails To Allege Facts Showing That The Calamos Defendants Unjustly Received A Benefit To His Detriment

Plaintiff's allegations concerning benefits the Calamos Defendants allegedly obtained are internally inconsistent with other allegations in the Complaint. As detailed in the Calamos Defendants' Supplemental Memorandum, under the "fund business model" alleged by Plaintiff, the Calamos Defendants receive management fees based on a percentage of the Fund's "managed assets." *See* Calamos Supp. Memo. at 8 (citing Compl. ¶ 26-30, 68). As a result, if the AMPS redemptions harmed the Fund as alleged -- *i.e.*, by increasing Fund costs and diminishing Fund assets -- the Calamos Defendants would experience a corresponding *decrease* in advisory fees. Plaintiff's Response completely fails to address these internally inconsistent allegations, and this alone is grounds for dismissing the unjust enrichment claim.

In addition, Plaintiff has not shown that he suffered an unjust detriment as a result of any benefit to the Calamos Defendants.[10] Plaintiff does not respond to the Calamos Defendants' argument that "the detriment Plaintiff is alleging here is one that the Fund, not Plaintiff, experienced." *See* Calamos Supp. Memo. at 9. Indeed, as explained on pages 4-5 of this Memorandum, Plaintiff's arguments in his Response concerning allegedly increased Fund expenses and reduced Fund profits serve only to bolster this point.

---

[10] Plaintiff's "enrichment" allegations are both indirect and speculative. Plaintiff alleges on "information and belief" that the redemptions of the AMPS benefited banks and broker-dealers, who were under pressure from authorities and private litigants to repurchase the AMPS. Compl. at ¶¶ 35, 38. Based on this benefit to the banks and broker-dealers, Plaintiff speculates that the Calamos Defendants indirectly benefited from the redemption of the AMPS because they "protected their ability to finance new and existing funds," *see* Pl's Opp. at 4, and then, as a result, were somehow "enriched through fees collected directly from the Trust and through fees collected from numerous other funds within the Calamos Sponsorship Group." Pl's Opp. at 21.

Even if Plaintiff has alleged – in wholly conclusory terms – that as a result of increased costs to the Fund, the Fund's dividend rate declined in the years after the redemption of the AMPS, at no point does he show how the Calamos Defendants' fees resulted in this derivative detriment to him, nor does he show that he was somehow entitled to receive those fees. *See Cement-Lock v. Gas Tech. Inst.*, No. 05-C-0018, 2007 WL 4246888, at *31 (N.D. Ill. Nov. 29, 2007) ("Because Plaintiffs here have failed to establish any entitlement to the increased salaries and bonuses allegedly paid to the individual Defendants, their unjust enrichment claim against these parties is dismissed"). Plaintiff's failure to show a relation between the alleged enrichment and his alleged loss warrants dismissal of his unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, each of the claims asserted in Plaintiff Bourrienne's Complaint should be dismissed with prejudice.

Dated:  February 11, 2011

Respectfully submitted,

Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers and David D. Tripple

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: 312.372.1121
Facsimile: 312.345.9060

By:  /s/ John W. Rotunno
       One of their attorneys

Defendants John P. Calamos, Sr., Calamos Advisors LLC, and Calamos Asset Management, Inc.

Christian J. Mixter *(pro hac vice)*
Patrick D. Conner *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.739.3000
Facsimile: 202.739.3001

By:  /s/ Christian J. Mixter
       One of their attorneys

15

Kevin B. Dreher
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: 312.324.1000
Facsimile: 312.324.1001

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he caused the foregoing *Joint Reply Memorandum in Support of the Independent Trustee Defendants' and the Calamos Defendants' Motion to Dismiss* to be served automatically via CM/ECF upon the following counsel of record:

Leigh Lasky
Norman Rifkind
Amelia S. Newton
Heidi E. VonderHeide
LASKY & RIFKIND, LTD.
350 North LaSalle Street, Suite 1320
Chicago, Illinois 60654

Marvin L. Frank
Benjamin D. Bianco
Gregory A. Frank
MURRAY, FRANK & SALIER LLP
275 Madison Avenue, Suite 801
New York, New York 10016


          /s/ John W. Rotunno
          John W. Rotunno